**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

```
FILED
JAMES J. WALDRON, CLERK

June 9, 2008

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy
```

In Re:                                              :    CHAPTER 11
                                                    :
1945 Route 23 Associates, Inc., and                 :
R&S Parts and Service, Inc.,                        :    CASE NO.:    06-17474 (NLW)
                                                    :
                Debtor.                :
                                                    :

**Before:**    **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Jeffrey A. Donner, Esq.
Martin G. Gilbert, Esq.
Stryker, Tams & Dill, LLP
Two Penn Plaza East
Newark, NJ 07105
Attorneys for Dominick Tozzo

Gregory S. Kinoian, Esq.
Okin, Hollander & Deluca, LLP
One Parker Plaza, 12th Floor
Fort Lee, NJ 07024
Co-Counsel for Autobacs Strauss, Inc.

Rick B. Antonoff, Esq.
Pillsbury, Winthrop, Shaw, Pittman, LLP
1540 Broadway
New York, NY 10036
Co-Counsel for Autobacs Strauss, Inc.

This matter is before the court on a motion by Dominick Tozzo for a determination that Autobacs Strauss, Inc. as a tenant, is required to pay its proportionate share of the balance of property taxes and CAM ("Common Area Maintenance") charges for the lease period May 1, 2006 through April 30, 2007. As set forth at greater length below, the court finds in favor of the movant.

## JURISDICTION

The court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This matter is a core proceeding under 28 U.S.C § 157(b)(2)(M) and (O). The following constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

On August 10, 2006, 1945 Route 23 Associates, Inc. ("Route 23") and R&S Parts & Service ("R&S") (collectively "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. At the time of filing, Route 23 owned commercial real estate in Wayne, New Jersey and R&S conducted business as a retailer of after-market automotive parts and accessories and as an operator of automotive service centers at various locations. As debtors-in-possession, the Debtors continued in possession of their properties and management of their businesses.

Dominick Tozzo ("Tozzo") is the owner of a shopping center located at 77-105 Bloomfield Avenue, Bloomfield, New Jersey (the "Property"). In April, 1994 R&S entered into a 20 year lease agreement with Tozzo ("Tozzo Lease") for a portion of the Property. Among its obligations under

the lease, R&S was required to pay its proportionate share of real estate taxes and assessments levied on the Property. *(Dominic Tozzo Certification, ("Tozzo Cert.") Ex. A ¶ 18.)* Additionally, R&S was required to pay its proportionate share of the CAM charges for the Property. *(Id. ¶ 43.)* Paragraph 43(c)(3) of the lease detailed the manner in which R&S would be billed for its share of the CAM:

> Tenant shall pay to landlord $700.00 per month on account of Tenant's Common Area Charge, together with the Base Rent monthly installment payment. As soon as practicable after the end of the first calendar year of the term and at the end of each calendar year thereafter, Landlord shall submit to Tenant a statement of the amount required to be paid by Tenant under this Paragraph, setting forth in reasonable detail the items and amounts included in, and the method of calculating, Common Area Maintenance Costs and Tenant's CAM ("Landlord's Costs Statement"), the amount theretofore paid by Tenant and the amount of the resulting balance due thereon or overpayment thereof as the case may be. If the payments made by Tenant during the preceding calendar year (or period) shall have exceeded the actual amount due from Tenant, Landlord shall submit to Tenant a Cost Statement showing any excess payment made by Tenant and shall credit Tenant for the amount thereof against the next payment or payments due for Tenant's CAM. If Landlord's Cost Statement discloses that the payments made by Tenant were less than the actual amount of Tenant's CAM for the preceding calendar year (or period), Tenant shall pay any deficiency to Landlord within thirty (30) days following receipt of Landlord's Cost Statement.

Several years later, as part of the resolution of various payment issues, Tozzo and R&S agreed that the payment terms set forth in paragraph 43(c)(3) would apply to the payment of real estate taxes as well as CAM charges. *(Tozzo Cert. ¶ 8.)*

Approximately three months prior to the R&S bankruptcy, on May 17, 2006, Tozzo submitted to R&S the Cost Statement for the period May 1, 2005 through April 30, 2006, which totaled $66,030.58. *(Id. ¶ 9.)* Although paragraph 43(c)(3) required R&S to pay the deficiency reflected in the Cost Statement within 30 days following its receipt, no payment was made. *(Id.)* However, R&S continued to pay the base rent and the $700 per month on account of CAM charges.

*(Id.)* Thus, Tozzo notes that as of August 10, 2006, when the chapter 11 cases were commenced, the only lease arrearage due was the $66,030.58 reflected in his Cost Statement to R&S.

In February 2007, in furtherance of their effort to reorganize, the Debtors moved, inter alia, to assume certain leases and fix the cure amounts for the leases. *(Court Docket No. 399.)* The Debtors included the Tozzo lease among the leases to be assumed and scheduled the cure amount needed for assumption as $66,030.58. On March 7, 2007, the return date for the motion, a number of counsel appeared to place the terms on the record regarding the assumption and cure of their clients' leases. At the hearing the following representations were made by the Debtor's counsel and counsel for Tozzo:

> MR. HORN: The next lease before Your Honor is the lease between the debtors and Dominick Tozzo –
>
> MR. GILBERT: Tozzo.
>
> MR. HORN: – capital T-o-z-z-o. Tozzo, excuse me. The cure amount with respect to the debtor's lease with Dominick Tozzo shall be modified as $66,030.58. This too will be paid by the debtors on the 75th day following the assumption effective date. Also, one more thing with Dominick – with respect to Dominick Tozzo that they wanted to put on the record. They just wanted to make it clear, which it is clear anyway, but we just wanted to make sure that it's on as well, that the – Mr. Tozzo reserves all of its rights to contest the assignment of the lease when that matter comes before Your Honor, which they already have.
>
> THE COURT: Sure.
>
> MR. GILBERT: Counsel's recitation is accurate. Actually, it's not a change in the assumption amount. The amount in the schedule is agreed to be the

4

|  |  |  |
|---|---|---|
|  |  | correct monetary amount at this point. |
| MR. HORN: | | Thank you. |
| THE COURT: | | Okay. With that reservation of at this point, yes, I understood. Okay. |

*(Hr'g. Tr. 14:12 to 15:8, Mar. 7, 2007.)* Consistent with the representations at the hearing, the March 26, 2007 order authorizing the assumption of the various leases ("Assumption Order") specifically provided with regard to the Tozzo lease that "Tozzo reserves his right to contest the Debtors' assignment of the Lease." *(Court Docket No. 480 ¶ 19.)* Neither Tozzo's counsel nor Debtor's counsel addressed the as yet unbilled amount for R&S's proportionate share of taxes and the CAM charge deficiency for the current lease period (May 1, 2006 to April 30, 2007). Likewise, the Assumption Order was silent on the subject.

Autobacs notes that, in contrast, counsel for Vornado Realty Trust ("Vornado") took pains to specifically preserve his client's ability to obtain payment of additional CAM and other charges. *(Hr'g. Tr. 11:7-12, 11:21-22.)* However, it is helpful to put the statements by Vornado's counsel in greater context. After agreeing on a cure amount and the payment schedule the following discussion occurred:

|  |  |
|---|---|
| MR. MANKOVETSKIY: | The payment schedule which was outlined by Mr. Horn is accurate. |
| THE COURT: | Okay. |
| MR. MANKOVETSKIY: | I would like to have the record reflect that in addition to the rent cure amounts that are listed in the motion and upon which we agreed with the debtors, there are certain other aspects under the leases that must be cured, and that Vornado does not waive the right to seek that cure as a condition to |

5

|  |  |
|---|---|
|  | the assumption. |
| THE COURT: | By that you mean non-monetary issues– |
| MR. MANKOVETSKIY: | Well – |
| THE COURT: | – or what – |
| MR. MANKOVETSKIY: | They're both – |
| THE COURT: | – specifically are you – |
| MR. MANKOVETSKIY: | Let me specify what they are. |
| THE COURT: | Thank you. |
| MR. MANKOVETSKIY: | With respect to monetary issues, the debtor pays certain common area maintenance charges and real estate taxes – |
| THE COURT: | Right. |
| Mr. MANKOVETSKIY: | – and percentages through the year. Those are projected numbers. At the end of the calendar year there's a reconciliation. Based on that, there may be additional amounts due. We don't know what that amount is at this time. It's being determined by Vornado. So upon the determination of that amount, that additional amount may have to be paid by the debtor, and Vornado does not waive the right to seek that amount as a condition to the assumption.<br><br>In addition, with respect to three leases, under the terms of the lease the debtors are obligated to form certain environmental cleanup matters and obtain no further action letters from the New Jersey Department of Environmental Protection. |

| | |
|---|---|
| THE COURT: | Right. |
| MR. MANKOVETSKIY: | And similarly, Vornado insists that those actions be taken in accordance with the leases and can be part of the cure and adequate assurance of future performance. With that, that's the caveat that we would like to put on the record. |
| THE COURT: | Okay, and I guess my only issue is the debtor concedes this or what? |
| MR. HORN: | Your Honor, while – we're fine with the environmental. With respect to the actual CAM charges and true ups at the end of the year, we're fine with that if that's the deal that has to be. It is what it is. Our – my only thing that I want to add is that we do reserve the right to contest those amounts, and if necessary, you know, try to strike [sic] deal or litigate with respect to them as to, you know, what our portion is and what we're responsible for, et cetera. We basically reserve all of our rights with respect to challenging it. |

*(Id. 11:4 to13:5.)* The Assumption Order Embodied the reservation of rights expressed by both counsel for Tozzo and Vornado. (Court Docket No. 480 ¶¶ 14, 19.)

At about the same time that the Debtors were addressing their leasehold interests they were engaged in discussions to sell substantially all of their assets. Ultimately, they entered into an Asset Purchase Agreement ("APA") with Autobacs, dated March 29, 2007. Like the other assumed leases, the Tozzo lease was included on Exhibit A to the APA as an Assumed Agreement. *(APA, Court Docket # 513, Ex. A.))* Autobacs's liability for the Assumed Agreements was explained in Article I of the APA under the heading "Assumed Liabilities", which provided:

7

> "Assumed Liabilities" means (a) all liabilities that arise and relate to the period after the Closing Date under the Assumed Agreements and (b) all outstanding liabilities to pay trade payables and other liabilities incurred in the ordinary course of business during the administration of the Chapter 11 case. For avoidance of doubt, Assumed Liabilities exclude any Liability attributable to any act, occurrence or omission which occurred prior to Closing except as expressly assumed hereunder.

Inasmuch as the sale of assets was incorporated in the Debtors' Plan of Reorganization ("*Plan*") and formed the means by which the Plan would be funded, the APA conditioned the sale on an order confirming the Plan. *(APA ¶ 8.1(d).)* On April 27, 2007, an "Order Confirming the Debtors' First Amended Joint Plan of Reorganization ("Confirmation Order") was entered by the court. *(Court Docket #561.)* The Confirmation Order approved the APA and limited Autobacs's liability to obligations expressly set forth in the APA. *(Confirmation Order ¶¶ 7, 15.)*

Autobacs represents that after confirmation of the Debtors' plan the transactions under the APA closed on May 2, 2007 and thereafter, it paid Tozzo the agreed upon cure amount of $66,030.58. *(Response of Autobacs Strauss, Inc. ¶ 15.)* Subsequently, on June 1, 2007, Tozzo sent Autobacs a Cost Statement for the period from May 1, 2006 through April 30, 2007 ("Initial 2007 Cost Statement").*(Tozzo Cert. ¶13, Ex. D.)* After discovering an arithmetic error, on July 30, 2007 Tozzo sent a corrected statement ("Corrected 2007 Cost Statement") setting forth the amount of $69,562.57. *(Id. ¶ 13, Ex. E.)*

Both of the Cost Statements were sent to Autobacs at the address provided in the APA. *(Id. ¶ 9).* Because no payment was forthcoming, on January 23, 2008 Tozzo's counsel sent notice that failure to rectify the nonpayment would constitute a default. *(Id. ¶ 14, Ex. F.)* Tozzo avers that no payment has been received from Autobacs, and as a result the instant motion was filed. Tozzo now requests not only payment of the amount set forth in the Corrected 2007 Cost Statement, but also

the attorneys' fees and costs incurred in bringing the instant motion.[1]

## DISCUSSION

Determination of whether Autobacs is liable to Tozzo for the $69,562.57 set forth in the Corrected 2007 Cost Statement requires resolution of two issues: (i) whether the taxes and CAM deficiency should have been claimed by Tozzo as part of the cure amount for assumption of the Tozzo lease, and (ii) whether the language of the APA, Assumption Order and Confirmation Order extinguished all liability under the Tozzo lease except for the cure amount fixed in the Assumption Order.

Tozzo argues that disposition of this matter simply requires application of the terms of the lease agreement. He asserts that as set forth in the lease, the tenant's proportionate share of taxes and the CAM deficiency only arises when the Cost Statement is sent. Thus, for the lease year 2006-2007, the payment obligation first arose on June 1, 2007 when the Initial 2007 Cost Statement was sent, and subsequently on July 30, 2007 when the Corrected 2007 Cost Statement was sent. Tozzo

---

[1]Paragraph 29 of the lease agreement provides, in pertinent part, that:

> (a) Tenant is in default of this Lease if, among other things set forth in this Lease: Tenant defaults in the payment of any obligation required under this Lease for more than fifteen (15) days after receipt of written notice of such failure....
>
> (b) Upon Tenant's default, Landlord shall have the right, but not the obligation, to pay or discharge any such obligation. Should Landlord elect to pay or discharge any such obligation, Tenant shall within ten (10) calendar days from the date of Landlord's written demand reimburse Landlord in the full amount thereof together with Landlord's expenses incurred in connection therewith, including but not limited to, reasonable attorney's fees and interest at the highest rate allowed by law from the date of Landlord's disbursement and same shall be Additional Rent.

further submits that at the March 2007 hearing on assumption of the lease, no arrearage existed for the 2006-2007 taxes and CAM deficiency because the obligation to pay had not yet arisen. According to Tozzo, as assignee of the lease Autobacs has assumed all of the burdens as well as the benefits of the Tozzo Lease and must now pay the $69,562.57 reflected in the Corrected 2007 Cost Statement.

In contrast, Autobacs offers two reasons why it is not obligated to pay the tenant's proportionate share of the property taxes and CAM charge deficiency. First, it argues that by not reserving his rights regarding the payment of property taxes and the CAM deficiency at the hearing on lease assumption or in the assumption order, Tozzo waived his right to seek payment from Autobacs. Second, Autobacs asserts that Tozzo's analysis fails to take into account language in the APA, the Assumption Order and the Confirmation Order that limits the nature of the obligations for which Autobacs can be held responsible for payment. After reviewing the pertinent documents and case authority, the court is not persuaded by Autobacs's arguments.

In particular, the court finds Autobacs's waiver argument is not supported by the facts or New Jersey law. Waiver "is the intentional relinquishment of a known right." *West Jersey Title & Guar. Co. v. Indus. Trust Co.,* 27 N.J. 144, 152 (1958). "The party waiving a known right must do so clearly, unequivocally, and decisively." *Knorr v. Smeal*, 178 N.J. 169, 177 (2003)(citing *Country Chevrolet, Inc. v. Twp. of N. Brunswick Planning Bd.*, 190 N.J. Super 376, 380 (App. Div. 1983)). However, "[t]he intent to waive need not be stated expressly, provided the circumstances clearly shows that the party knew of the right and then abandoned it, either by design or indifference." *Id*.

Autobacs suggests that having heard Vornado's counsel explicitly state that Vornado did not waive its right to seek payment of real estate taxes and CAM charges after a year-end reconciliation,

counsel for Tozzo should have insisted on a like reservation. Autobacs urges that the failure to have done so constituted a waiver. The problem with this argument is evidenced by the instant motion. It is apparent that Tozzo and his counsel believed that the only arrears extant at the time of the motion to assume the Tozzo Lease was the $66,030.58 requested in the prepetition Cost Statement. The Debtors were otherwise current in their monthly rent obligations. Further, it appears that Tozzo's counsel believed that under the terms of the Tozzo Lease the obligation to pay property taxes and the CAM deficiency for the 2006-2007 lease year (ending April 30, 2007) constituted a future obligation, not yet due and thus not an amount to be requested as part of a cure for purposes of lease assumption. Given this position, it is not surprising to the court, that Tozzo's counsel did not follow Vornado's lead and specifically reserve the right to seek payment of a future obligation. It appears to the court that Tozzo's counsel relied on his understanding of terms of the Tozzo Lease and requirements for cure under 11 U.S.C. § 365(b). This does not evince either an intentional relinquishment or an indifference to Tozzo's rights to obtain payment of the Corrected Cost Statement for the 2006-2007 lease year.

Circumstances that evidence waiver are illustrated by *Poray v. Royal Globe Ins. Co.*, 90 N.J. Super. 454 (Law Div. 1966). The case involved an action in which plaintiff sought recovery under the uninsured motorist clause. Only after trial, and a verdict in favor of plaintiff against the insurer did the insurer insist on arbitration as provided in the policy. Finding that the insurer waived its right to insist on arbitration the court recounted the following:

> The stipulation here discloses that early in the Poray v. Foy action Royal Globe's attorney orally suggested to Poray's attorney that the matter should proceed to arbitration. Obviously, Royal Globe was early on notice that Poray was by-passing arbitration. Royal Globe failed however, to exercise its right to demand arbitration under the policy or to seek relief under the statute. Moreover, Royal Globe

11

> failed to take any positive position regarding arbitration before Poray finally obtained judgment. Poray's direct interrogatory as to whether Royal Globe sought arbitration was not answered until after the entry of Poray's judgment. This was almost two years after Royal Globe first had notice that Poray was filing an action against Foy. Consequently, Royal Globe's conduct constituted continuing indifference of its right to demand arbitration under the provisions of the policy and is a waiver of that right.

90 N.J. Super. at 460-61. The foregoing is a somewhat extreme example of circumstances evidencing indifference to an enforceable right. Nonetheless, it highlights the important point that a single instance of remaining silent, without more, should not be construed as waiver. This is particularly so where counsel's silence is predicated on his understanding of the terms of a lease and the law. Moreover, the court views the record at the hearing on assumption of the Debtor's leases as equivocal. While Autobacs constructs one scenario from the Vornado colloquy, the court finds that it is also possible that Tozzo's counsel understood the Debtor's acceptance of Vornado's insistence that the year-end reconciliation be paid as a validation of his position. In short, there is no evidence that Tozzo's counsel unequivocally waived the tenant's obligation to pay the year end Cost Statement.

Nor is the Court persuaded that the language of the APA, the Assumption Order and the Confirmation Order bar Tozzo from seeking payment from Autobacs. The Assumption Order simply provided that cure amounts were "fixed" and that "no other monetary or other defaults existed under the Assumed Leases as of the Assumption Effective Date." In March 2007 R&S was current on its monthly payments and the only payment default that required cure under § 365(b)(1) was the $66,030.58 attributable to R&S's nonpayment of the Cost Statement for the 2005-2006 lease year. Appropriately, the Assumption Order provided for payment of the foregoing amount. The court agrees with Tozzo that the 2007 Initial Cost Statement and the 2007 Corrected Cost Statement

are not subject to the terms of the Assumption Order because under the terms of the lease no payment was due. Inasmuch as no payment was due, no default existed and the terms of the Assumption Order do not bar Tozzo from seeking payment of the 2007 Corrected Cost Statement from Autobacs.

Lease provisions for year-end reconciliations of taxes and CAM charges are commonplace in commercial leases. As a practical matter, although the expenses accrue throughout the lease term, the total amount of such charges and the allocation to each tenant cannot be fixed until year-end. The court is hard-pressed to understand how the accruing, but unknown and unbilled taxes, and CAM deficiency can constitute a default requiring cure.

The court is similarly not persuaded by Autobacs's construction of the pertinent provisions of the APA. Autobacs concedes that the Tozzo lease is an Assumed Agreement but then contends that the 2007 Corrected Cost Statement is not an Assumed Liability because much of the amount due under that cost statement accrued prior to the sale closing date (May 2, 2007). It contends that under the APA's definition of Assumed Liabilities, the obligation must both arise and relate to a period after the closing date. Further, it concludes that the following sentence in the definition clearly expresses Autobacs's intent not to assume liabilities like those contained in the 2007 Corrected Cost Statement: "For avoidance of doubt, Assumed Liabilities excludes any Liability attributable to any act, occurrence or omission which occurred prior to Closing except as expressly assumed hereunder." Autobacs concludes from this that because it did not expressly assume the obligation to pay the cost statement, the obligation is expressly excluded. The flaw in Autobacs's argument is that under the APA Autobacs expressly assumed the Tozzo lease, and thereby expressly assumed all of its provisions, including the obligation to satisfy the payment of the 2007 Corrected

Cost Statement. When R&S, and subsequently Autobacs, assumed the Tozzo lease, they assumed it in its entirety, accepting the burdens as well as the benefits. *See In re Fleming Cos., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007). Unquestionably then, the assumed obligation to pay the Corrected 2007 Cost Statement arises and relates to the period after the closing date because that is when the obligation came due. Equally, having assumed the contract in its entirety, Autobacs is subject to the requirements of paragraph 29 and is liable for the reasonable attorney fees incurred by Tozzo.

Moreover, the court agrees with Tozzo that *In re Montgomery Ward Holding Corp.,* 268 F.3d 205 (3d Cir. 2001) provides guidance. In *Montgomery Ward,* the landlord sought recovery under a lease provision for payment of taxes similar to the one at issue before this court. The landlord sought reimbursement for taxes that accrued largely prepetition, but which under the lease agreement became due and payable postpetition. 268 F.3d at 206-07. The landlord argued that under 11 U.S.C. § 365(d)(3) the taxes were immediately payable because the obligation arose after the order for relief. *Id*. at 208. The Third Circuit agreed, stating that "[t]he clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms." *Id.* at 209. It is obviously equally true that a party assuming a lease must likewise perform as required by the lease terms. Most importantly, the Court in *Montgomery Ward* further stated that:

> In the context of a lease contract it seems to us that the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform.

*Id.*

In the present matter, the obligation to pay first arose only when the Initial 2007 Cost Statement was issued – which occurred after the closing and after Autobacs assumed the Tozzo lease.

Finally, the language of the Confirmation Order does not shelter Autobacs from its obligation to pay $69,562.57 as reflected in the 2007 Corrected Cost Statement. That order merely limits Autobacs's liability to the obligations identified in the APA and precludes liability "on account of any taxes accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business before the Closing Date, <u>except for its obligations under the Plan and the APA.</u>" (emphasis added). The language in the Confirmation Order is fully compatible with the obligation to pay property taxes and CAM deficiency under the cost statement that was issued under the terms of Tozzo lease assumed by Autobacs.

## **CONCLUSION**

As set forth above, the Tozzo lease requires payment of taxes and CAM deficiency after issuance of a cost statement by Tozzo. Having assumed the lease pursuant to the APA, Autobacs is obliged to pay the 2007 Corrected Cost Statement.

Dated: 6/9/08

_____
NOVALYN L. WINFIELD
United States Bankruptcy Judge